Hilgers Graben PLLC
Michael Merriman, California Bar No. 234993
mmerriman@hilgersgraben.com
655 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 369-6232
Attorney for PLAINTIFFS EDGAR GONZALEZ
AND DELIA SUAREZ-BELL AND THE PROPOSED CLASS

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

EDGAR GONZALEZ AND DELIA SUAREZ-BELL, on behalf of themselves and those similarly situated,

Plaintiffs,

v.

PROGRESSIVE SELECT INSURANCE CO., and UNITED FINANCIAL CASUALTY CO.,

Defendants.

Case No.

**COMPLAINT – CLASS ACTION**

**1. Violation of the Unfair Competition Law Cal. Bus. & Prof. Code § 17200 Et Seq.**

**2. Breach of Contract**

Jury Trial Demanded

Plaintiffs Edgar Gonzalez and Delia Suarez-Bell ("Plaintiffs"), on behalf of themselves and all others similarly situated, bring this action against Progressive Select Insurance Company ("Progressive Select") and United Financial Casualty Company ("United Financial") (collectively, "Defendants" or "Progressive"). Plaintiffs, on behalf of themselves and all others similarly situated, demand a trial by jury on all counts for which a right to trial by jury is allowed and in support of this Complaint allege as follows:

1

1

## NATURE OF THE ACTION

2       1.    This case deals with the Defendants'[1] systematic claims handling process when

3   they declare an insured's vehicle a "total loss." In this process, Defendants, in violation of

4   California law, fail to inform their insureds of the benefits available to them under their automobile

5   insurance policy and instead manipulate their insureds into transferring ownership of valuable

6   property—the damaged vehicle—to a sister entity as a condition to obtaining a cash settlement

7   check for actual cash value owed them under Defendants' Policy. The sister entity then sells the

8   damaged vehicle at auction for its salvage value reaping millions of dollars that belong to

9   Defendants' insureds.

10   ## BACKGROUND

11       2.    Plaintiffs and putative Class members have had vehicles insured under Defendants'

12   standardized California automobile insurance policy ("Policy") covering damage to motor

13   vehicles.

14       3.    Plaintiffs and Class members have all gone through the same unfortunate

15   predicament of having their automobiles totaled (i.e., declared a "total loss" by their insurer—

16   Defendants here) after an accident or other damage event. Recovered stolen vehicles are not part

17   of the Class.

18       4.    California law includes regulations and other insurance laws that provide that, in

19   insurance policies and when claims are made under automobile policies, not only must all benefits

20   be disclosed to insureds, but also all limitations on coverage and benefits must properly be

21   disclosed to insureds to be enforceable. *See, e.g.*, 10 CCR § 2695.4(a). For example, section 2695.8

22   of CCR Title 10 requires an insurer that makes a "cash settlement"—which is an "actual cash

23   value" ("ACV") payment—to base that amount on the "actual cost of a comparable automobile"

24   and include specific fees and taxes. 10 CCR § 2695.8(b)(1).

25   ---

[1] Defendants are referred to collectively throughout this Complaint. Upon information and belief,
26   they are materially the same: they are both part of the Progressive Group (as defined by the
National Association of Insurance Commissioners and referenced in California insurance filings)
27   and hold themselves out as "Progressive" to the public; and upon information and belief they share
the same relevant claims handling processes and the same or materially similar Polices described
28   herein.

5. Section 2695.8 of CCR Title 10 with other California laws (such as Cal. Veh. Code §§ 544(b) and 11515(b)), is also properly interpreted to give the insured the right to choose to retain ownership of the damaged vehicle; and it would permit an insurance company to state in its insurance policy expressly that it will deduct the salvage value of the total loss vehicle from the ACV payment (i.e., transfer value of the salvage to the insurance company) when the insured chooses to retain ownership of the total loss vehicle.

6. Defendants, however, knowingly and intentionally misapply and misinterpret California law and the Policy. Defendants chose *not* to incorporate this permissive limitation provided for in 10 CCR 2695.8 (which permits a reduction from an ACV payment if the insured keeps the total loss vehicle) and others relating to transfer of vehicles into its standard form Policy, which makes these limitations unenforceable. Plaintiffs and Class members also had the right to be properly informed during the Defendants' claims process about their ownership rights and the benefits thereof (such as being able to retain and sell their total loss vehicle themselves with no penalty under the Policy), *see, e.g.*, 10 CCR § 2695.4(a), but Defendants' claims process systematically failed to make this important disclosure to Plaintiffs and Class members. Defendants intentionally failed to make this disclosure so that Plaintiffs and Class members would not know of their ownership rights and benefits, which would allow Defendants (through a sister company), rather than Plaintiffs and Class members, to sell the total loss vehicles for salvage and receive the salvage value for the vehicles.

7. Under California law, because the Policy never called for an absolute transfer of, or deduction for, insureds' total loss vehicles and values, in their claims process, Defendants had no right to take Plaintiffs' and Class members' total loss vehicles as a condition to receive a total loss cash payment. Defendants also had no right to reduce the amount paid to an insured if that insured was given the option to keep the damaged vehicle. Plaintiffs and Class members instead had the right to receive both the ACV cash settlement amount **and** retain ownership of the total loss vehicle, which Defendants denied them when they took their vehicles as a condition to receiving ACV payments for the total loss vehicles without properly informing them of these benefits under the Policy.

**CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL**
*Gonzalez v. Progressive Select Insurance Co.*, US District Court, Central District of California

8.      As detailed below, Defendants have knowingly and intentionally created an opaque claims handling process that misinterprets the Policy, misapplies and ignores California law, denies insureds rights and benefits, and fails to properly inform them of rights under the Policy and California law. Defendants knowingly and intentionally manipulated this process such that Defendants essentially forced Plaintiffs and Class members, who were without a vehicle and potentially in need of the cash settlement proceeds to purchase a new vehicle, to sign over title to their valuable damaged vehicles permanently to Defendants' sister entity, Progressive Casualty, which then sold the vehicle at auction at a huge profit to the detriment of Plaintiffs and Class members.[2] Defendants created and carried out this practice in order to increase profits for themselves and/or a sister entity by taking the salvage value of the insureds' total loss vehicles.

9.      As detailed below, Plaintiffs believe that by the foregoing conduct, Defendants committed unlawful, fraudulent, and/or unfair acts or practices that violate the Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200 et seq.), or in the alternative, breach the Policy.

10.     Each of these violations has caused concrete injury to Plaintiffs and Class members. Plaintiffs, individually and on behalf of all those similarly situated, seek restitution and seek injunctive relief for Defendants' violations of the UCL, and they alternatively seek damages for breach of contract.

## PARTIES, JURISDICTION, AND VENUE

11.     Plaintiff Edgar Gonzalez is an individual who is domiciled in, and is a citizen of, San Luis Obispo County, California.

---

[2] It appears the Alameda County District Attorney has filed a lawsuit against Progressive companies for systematically utilizing questionable software to undervalue the ACV for total loss vehicles. *See Alameda County District Attorney Pamela Price Announces Lawsuit Against Automobile Insurance and Software Companies, Alleging Scheme Underpaying California Residents for Totaled Vehicles to Maximize Insurance Profits*, Office of the Alameda County District Attorney (May 9, 2024), https://www.alcoda.org/alameda-county-district-attorney-pamela-price-announces-lawsuit-against-automobile-insurance-and-software-companies-alleging-scheme-underpaying-california-residents-for-totaled-vehicles-to-maximize-i/.      The District Attorney's action does not include the claims asserted in this action that relate to actions taken after an ACV is determined and actions taken to manipulate and take advantage of the total loss process to insureds' detriments.

**CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL**
*Gonzalez v. Progressive Select Insurance Co.*, US District Court, Central District of California

12.     Plaintiff Delia Suarez-Bell is an individual who is domiciled in, and is a citizen of, San Bernadino County, California.

13.     Defendants are Ohio corporations with their principal place of business in Ohio, where they are each a citizen. Each is authorized to transact insurance business in California.

14.     This is an action arising under California law. Jurisdiction is proper under the Class Action Fairness Act of 2005 because (a) the aggregate amount in controversy exceeds $5,000,000, (b) there are at least 100 Class members, and (c) at least one plaintiff is diverse from any one defendant. 28 U.S.C. § 1332(d)(2).

15.     All conditions precedent to the filing of this action, if any, have been performed, or have occurred, or Defendants have waived their enforcement or are estopped from enforcing them.

16.     The Court has personal jurisdiction over Defendants because Defendants market, issue, and sell automobile insurance throughout the State of California, are registered to do business including transact insurance business in California, and are engaged in substantial, continuous, systematic, and non-isolated insurance business activity within the State of California, including San Luis Obispo and San Bernadino Counties, California, which are in the Central District of California.

17.     Venue is proper in the Central District of California because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred here, the transactions at issue occurred here, and otherwise Defendants (corporations) have each substantial, continuous business contacts here, giving rise to personal jurisdiction over each one here. *See* 28 U.S.C § 1391.

## **DEFENDANTS' POLICY**

18.     Defendants sell automobile insurance in California that provides coverage for property damage done to a motor vehicle, whether by collision with another vehicle, theft of the vehicle, or from other perils. Defendants have issued earlier versions of automobile policies and similar versions of insurance policies for other types of vehicles and crafts in California previously.

19.     Defendants' Policy issued to Plaintiffs and Class members contained standardized pre-printed text, and Defendants drafted it. The preprinted terms in the Policy are nonnegotiable.

20. The Policy that provided property damage coverage to the motor vehicles of Plaintiffs and Class members is identified by a standard alphanumeric code appearing on the Policy. An exemplar of the Policy issued to Plaintiffs and Class members is attached as **Exhibit A**.

21. The terms of the Policy typically include damage coverage in **PART IV** of the Policy, describing the coverages for the insured vehicle and payments made when certain losses occur. These coverages are called collision coverage and comprehensive coverage and apply to "covered autos," which included Plaintiffs' and Class members' vehicles at all times material to this case. *See* Ex. A at 18–19 (describing Collision and Comprehensive coverages).

22. The Policy also provides that Defendants will pay ACV at the time of loss, which includes when they deem a vehicle a total loss. Defendants' pattern and practice is to pay ACV to insureds (including Plaintiffs and Class members) when it declares their vehicles total losses. The only reduction from ACV payment permitted in the Policy is the "applicable deductible." Ex. A at 23. As has been previously mentioned, ACV is defined in California law as the "actual cost of a comparable automobile" and including specific fees and taxes. *See* 10 CCR § 2695.8(b)(1).

23. This Policy should be compared to other prior versions of Defendants' automobile and other vehicle insurance policies that Defendants or other Progressive Group members issued in California.

24. Defendants' previous insurance policies have included a provision that expressly allows an additional deduction from ACV for "salvage value," as permitted by California law, if the insured keeps the vehicle. *See* excerpts collected in **Composite Exhibit B**. Defendants have chosen to omit any such provision in the Policy. Nowhere in any provision of the Policy issued to Plaintiffs and Class members is there a provision that permits Defendants to reduce ACV payments by salvage value if Plaintiffs or other Class members were to keep their total loss vehicles or otherwise. Nor is there a provision that addresses which party has the right to salvage value.

25. In other insurance policies, Defendants also included a separate provision that expressly stated Defendants would take the salvage vehicle or craft and its value if Defendants paid the insured ACV or amounts to replace a vehicle or if it declared the vehicle or craft a total

**CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL**
*Gonzalez v. Progressive Select Insurance Co.*, US District Court, Central District of California

loss. *See* excerpts collected in **Composite Exhibit B**. Defendants have likewise chosen to omit any such provision in the Policy.

26.    These separate salvage provisions were sometimes included in Defendants' insurance policies that also included separate "Payment of Loss" provisions including the one sentence quoted below (stating "We may keep the property at the agreed or appraised value[]") that Defendants now claim alone justifies Defendants' taking all total loss vehicles and their salvage values under the Policy in all instances. This sentence is in the second paragraph of **PART IV** of the Policy under the heading "**PAYMENT OF LOSS**," which reads,

**PAYMENT OF LOSS**

**We** may, at **our** option:
1.    pay for the loss in money; or
2.    repair or replace the damaged or stolen property.

At **our** expense, **we** may return any recovered stolen property to **you** or to the address shown on the **declarations page**, with payment for any damage resulting from the theft. **We** may keep all or part of the property at the agreed or appraised value.

**We** may settle any loss with **you** or the owner or lienholder of the property.

Ex. A at 24 (emphasis in original). Even if applicable to this case, this language, in light of California law, does not permit the insurance company to take the total loss vehicle without giving the insured the option to keep the vehicle. And if the insured keeps the vehicle, the Defendants still have no right to reduce the ACV payment by the salvage value.

## **DEFENDANTS' UNLAWFUL TOTAL LOSS SETTLEMENT PROCESS**

27.    Plaintiffs and each Class member have sought coverage for collision and/or comprehensive damage under the Policy. The insured motor vehicles are all non-stolen "covered autos" under the Policy[3] that sustained property damage covered under the Policy to such extent Defendants declared the vehicles a total loss under the Policy and Defendants' obligation to pay ACV on the covered claims was triggered.

28.    For these claims, Defendants undertook a routine total loss settlement process. In this process, Defendants routinely opted to pay ACV on total loss claims. Under California law,

---

[3] *See* Ex. A at 2.

**CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL**
*Gonzalez v. Progressive Select Insurance Co.*, US District Court, Central District of California

this payment is called a "cash settlement." 10 CCR 2695.8 (b). This provision also defines how to determine an ACV (cash) settlement under California law.

29.     That process involved declaring the non-stolen vehicles a total loss, valuation of the vehicles, and a cash settlement payment of purported ACV of the totaled vehicles Defendants ascribed to the loss, which Defendants have paid to Plaintiffs and Class members and is not at issue.

*The UCL Violation*

30.     Receiving an ACV payment after a total loss is, and obviously would be, material to any reasonable insured whose vehicle was totaled. Likewise, knowing and maximizing this amount would be material to any reasonable insured as well as knowing any rights and benefits, or rightful limitations on them, the insured may have in the totaled vehicle and payments relating thereto.

31.     In the foregoing total loss claims process and regarding the Policy, each Defendant has predominantly had superior knowledge and unequal bargaining power over insureds, including Plaintiffs and Class members. To this end, as recognized under California law, objectively, a reasonable insured must necessarily rely on the good faith, performance, disclosures, and nondisclosures of insurers like Defendants.

32.     Each Defendant took advantage of its superior position to violate its legal duties of fairness and disclosure owed to insureds, including Plaintiffs and Class members, under California law to Plaintiffs' and Class members' detriment.

33.     Defendants knew their obligations and Plaintiffs' and Class members' rights under the law and the Policy—which Defendants drafted—but Defendants knowingly and intentionally kept Plaintiffs and Class members in the dark about what was permitted and was not under the Policy and California law.

34.     Defendants' claims process not only knowingly and intentionally misconstrues the Policy, but it also knowingly and intentionally fundamentally misinterprets, misapplies, and violates California statutes, rules, and case law on salvage, total loss claims, and insurance policies, and the rights—including disclosures—afforded insureds thereunder.

**CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL**
*Gonzalez v. Progressive Select Insurance Co.*, US District Court, Central District of California

35.     To turn a profit either for itself or for a sister entity, in the total loss claims process—as a condition to obtaining a cash settlement check for ACV owed to insureds under Defendants' Policy—Defendants knowingly, intentionally, systematically, and routinely manipulated their insureds, including Plaintiffs and Class members, into transferring ownership to their total loss vehicles to a nonparty to the Policy—Defendants' sister company Progressive Casualty. The total loss vehicles were valuable, as demonstrated by the fact that they were sold at auction for their residual salvage values for Defendants' benefit with no compensation ever paid to insureds, including Plaintiffs and Class members, for salvage value.

36.     Defendants knowingly, intentionally, systematically, and routinely required this transfer as a condition to making ACV payments to their insureds despite that—unlike their previous insurance policies—Defendants chose to omit this benefit limitation and condition in the Policy. Defendants knew that, based on the Policy that Defendants drafted and on California law and regulations, they had no legal right to take Plaintiffs' and Class members' vehicles and that Plaintiffs and Class members had the right to keep their salvage vehicles without penalty and sell their vehicles at auction or otherwise or receive salvage value from Defendants if they transferred title of the vehicles to Defendants or Defendants' sister company. But Defendants took Plaintiffs' and Class members' vehicles anyway and sold those vehicles for a profit.

37.     Under a proper interpretation of California law, Plaintiffs and Class members have the right to choose to keep the damaged vehicle, including its salvage value, without penalty and are entitled to retain both when the vehicle is declared a total loss, permitting the insureds (rather than Progressive Casualty) to sell the vehicle at auction for salvage and reap the benefits therefrom. *See* Cal. Veh. Code §§ 544(b) and 11515(b); 10 CCR § 2695.8(b)(1)(A).

38.     California law is properly interpreted to require that any exceptions to and limitations on these and similar regulatory and statutory rights or other benefits of insureds relating to claims and the Policy, including limitations and exclusions regarding ownership of salvage, payments, and total loss vehicles must be expressly stated in the Policy, or the exceptions and limitations cannot be applied.

39.     For instance, under a proper interpretation of 10 CCR § 2695.8(b)(1)(A) and Cal. Veh. Code §§ 544(b) and 11515(b), in a total loss situation, California law mandates that the insured has a right to retain the damaged vehicle; if so, Defendants have the permission to deduct salvage value (i.e., receive a transfer from insureds of salvage value) to offset their ACV payments to insureds; but they can do so *only if* the Policy expressly includes the permissive payment deduction/limitation.

40.     Despite that they included this permissive limitation in prior policies, Defendants' current Policy never included this permissive limitation, and consequently Defendants could not try to enforce it.[4]

41.     Thus, in this case, under California law and the Policy, Plaintiffs and Class members had the right to receive both the ACV cash settlement amount **and** keep the damaged vehicle.[5] Defendants knew, based on California law and regulations and on the Policy that Defendants drafted, that Plaintiffs and Class members had this right, but Defendants' claims process regularly denied this right to Plaintiffs and Class members.

42.     Despite Plaintiffs' and Class members' rights under California law and the Policy, rights that Defendants knew about based on California law and regulations and on the Policy that Defendants drafted, in the claims process, Defendants as a pattern and practice knowingly and intentionally did not and do not properly inform their insureds including Plaintiffs and Class members of these rights and benefits. *See* 10 CCR § 2695.4(a). They routinely never disclosed to

---

[4] The only ACV deduction stated in the current Policy is for the "applicable deductible," implying that no other deductions would or could be made. *Compare* 10 CCR § 2695.8(b)(1) (insurer "may elect a cash settlement that *shall be based* upon the actual cost of a comparable automobile *less any deductible* provided in the policy") (emphasis added).

[5] When this happens, the insurer must notify the California Department of Motor Vehicles and advise insureds of their duties to process a salvage title. *See* Cal. Veh. Code § 11515(b). The California Department has created a document entitled "Salvage Vehicle Notice of Retention by Owner" form (REG 481) to accomplish this purpose. *See* Cal. Dept. of Motor Veh., Vehicle Industry Registration Procedures Manual, ch. 19, § 19.045, https://www.dmv.ca.gov/portal/handbook/vehicle-industry-registration-procedures-manual-2/salvage-nonrepairable-junk-vehicles/notice-of-retention-by-owner-salvage-vehicle/ (last visited October 4, 2024).

**CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL**
*Gonzalez v. Progressive Select Insurance Co.*, US District Court, Central District of California

Plaintiffs or Class members that Plaintiffs and Class members had the right to keep their damaged vehicle including its salvage value without penalty. Instead, in order to maximize profits for themselves and/or a sister entity, they have created and continue an opaque process where they require that if insureds want to receive their ACV payment, insureds **must** sign over title to their vehicle to Progressive Casualty. The result is that Defendants or their sister entity reaped monies that were and are rightly those of insureds, including Plaintiffs and Class members.

43.    Defendants knew that if they disclosed to their insureds that the insureds had the right to keep their total loss vehicles without penalty and sell their vehicles at auction or otherwise or receive salvage value from Defendants if they transferred title of the vehicles to Defendants or Defendants' sister company, their insureds—including Plaintiffs and Class members—would either choose to keep their vehicles or insist that they receive the salvage value of the vehicles from Defendants in addition to their ACV payments when Defendants took their vehicles. Therefore, to prevent insureds—including Plaintiffs and Class members—from exercising their rights to keep their vehicles or demanding that Defendants pay them salvage value if Defendants took their vehicles, so that Defendants could obtain the vehicles and sell them for salvage value without having to pay salvage value to insureds, Defendants intentionally failed to inform insureds about their ownership rights and benefits.

44.    Plaintiffs believe the foregoing conduct respectively by Defendants constitutes unlawful, unfair, or fraudulent acts or practices that violate the UCL.

*Breach of the Policy*

(Pled in the Alternative)

45.    Defendants, however, believe that one sentence of the Policy's "Payment of Loss" provision quoted above in Paragraph 26 that reads "We may keep the property at the agreed or appraised value," justifies taking all insureds' total loss vehicles with no compensation to insureds.

46.    While Plaintiffs do not believe this sentence applies to Plaintiffs and Class members based on the text of the Policy, in the alterative to Plaintiffs' UCL claim, if the Court accepts Defendants' current interpretation that this sentence applies to all vehicles, then Defendants misinterpret it and breach the Policy by enforcing it against Plaintiffs and Class

members as a basis for taking their vehicles and their salvage values and reducing payment to insureds if they keep their vehicles.

47.    This sentence as presented by Defendants gives it an option (i.e., it "*may* keep the vehicle") that is exercised after it has made its ACV determination and as part of the ACV settlement. Moreover, it appears that California law gives the *insured* the option to keep the vehicle, which means the Defendants' interpretation violates California law.

48.    This sentence is also separate from Defendants' obligation to pay ACV for the total loss vehicle, which exists in a separate section of the Policy. In context, as previously admitted under oath by Defendant Progressive Select in other federal litigation, this sentence is limited to stolen vehicles. Thus, it has no applicability to Plaintiffs and Class members and cannot justify Defendants' conduct.

49.    If the Court does find that the choice to keep the vehicle is Defendants' under the Policy language, then an equally reasonable interpretation of the foregoing sentence is that when Defendants exercise their option to keep the vehicles, then they must pay insureds "the agreed or appraised [*salvage*] value" of the damaged total loss vehicles in addition to ACV. In other words, "value" is not ACV in this sentence. When Defendants mean ACV, they say so in the Policy. They chose not to in this provision. As such, the Policy is reasonably interpreted to mean that Plaintiffs and Class members were due the "the agreed or appraised [*salvage*] value" when Defendant took their vehicles, which Defendants have failed to pay. This interpretation is buttressed by Defendants' failure to include any language in their Policy that the ACV cash settlement payment is reduced by salvage value if the insured keeps the vehicle. It is also buttressed by California law that would permit the Defendants to keep the salvage value to the insured, but *only if* that option is expressly stated in the Policy.

50.    If the Court agrees with this interpretation, then alternatively Plaintiffs contend Defendants breached the Policy by taking Plaintiffs' and Class members' vehicles but not paying them post-loss salvage value as indicated in this sentence.

51.    In the very least, this sentence—as demonstrated by, among other things, Defendant Progressive Select's flip-flop on its meaning and Defendants' departure from the

salvage language in prior policies—is ambiguous and thus must be interpreted in Plaintiffs' favor on the breach of contract claim.

### FACTS RELATED TO PLAINTIFF EDGAR GONZALEZ

52.      Plaintiff Gonzalez—one of Defendant Progressive Select's named insureds under the Policy—was a victim of the UCL violations spelled out above or the alternative breach of contract. On April 10, 2022, Mr. Gonzalez's mother Margarita Gonzalez Silva was involved in an accident that resulted in collision damage to a vehicle that was insured under Mr. Gonzalez's Policy. After the accident, on April 10, 2022, Mr. Gonzalez contacted Progressive Select and made an insurance claim to Progressive Select under the Policy. Mr. Gonzalez handled all aspects of the claim including the total loss settlement.

53.      Throughout the claims process, from April 2022 to at least August 2022, Progressive Select communicated with Mr. Gonzalez multiple times via email, telephone, and in-person, including but not limited to an email sent to Mr. Gonzalez providing a document titled "Settlement Summary" that gave information related to the claim, the vehicle, and the settlement amount, and an email sent to Mr. Gonzalez providing a document titled "Claim Information" that provided an offer for compensation to Ms. Gonzalez Silva related to injuries she received in the accident. Mr. Gonzalez read the emails that he received from Progressive Select and spoke with Progressive Select over the phone and in person, and he relied on the information Progressive Select provided to him in these communications. On information and belief, Progressive Select has records that include the dates, methods, and content of additional communications to Mr. Gonzalez as well as the identities of Progressive Select representatives, agents, or employees who made these communications to Mr. Gonzalez—information that is solely within the possession of Progressive Select. Progressive Select could have disclosed in any of the aforementioned or other communications to Mr. Gonzalez that he could keep his salvage vehicle without penalty and could sell his vehicle at auction or otherwise or receive salvage value from Defendants if he transferred title to Progressive Casualty, but in no communication to Mr. Gonzalez did Progressive Select ever disclose such information to Mr. Gonzalez.

**CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL**
*Gonzalez v. Progressive Select Insurance Co.*, US District Court, Central District of California

54.     At all times material, Mr. Gonzalez had made payments of premiums under the Policy, and it was in full force and effect at the time of the accident.

55.     Although Ms. Gonzalez Silva held the title to the car, Mr. Gonzalez had purchased the car for his mother and paid entirely for it making him a beneficial owner of the vehicle. Both the car and Ms. Gonzalez Silva were insured under Mr. Gonzalez's insurance policy.

56.     After the accident, Progressive Select covered the claim and declared the non-stolen vehicle a total loss and offered to pay and paid Mr. Gonzalez what Progressive Select deemed actual cash value.

57.     At or about the time of settling the claim in or about March-April 2022, Mr. Gonzalez was subject to Defendants' claims process described above. In the claims process, knowing, maximizing, and receiving the amount of an ACV payment and knowing his attendant rights to his salvage vehicle were material to him.

58.     At or about the same time, for Mr. Gonzalez to receive his ACV payment, Progressive Select required Mr. Gonzalez through his mother Ms. Gonzalez Silva to transfer title to the vehicle to Progressive Select's affiliate Progressive Casualty even though the Policy did not state this condition to receiving his ACV payment. Among other things, a form title transfer document dated during this timeframe would typically evidence this transfer requirement as does typically a form "ADVICE FOR PAYMENT." Progressive Select paid Mr. Gonzalez ACV. But Progressive Select did not pay Mr. Gonzalez the salvage value of his total loss vehicle, even though under California law he was entitled to keep the vehicle and its value and a contrary limitation on this benefit was not disclosed in the Policy.

59.     At or about that same time, when he made his claim, and in the Policy, Progressive Select also did not disclose to Mr. Gonzalez that he could keep the salvage vehicle without penalty and could sell the vehicle at auction or otherwise or receive salvage value from Defendants if he transferred title to Progressive Casualty.

60.     Thanks to Progressive Select, Mr. Gonzalez was totally in the dark. The foregoing conduct and omission of the information that Progressive Select failed to disclose to Mr. Gonzalez were material to him. Moreover, such conduct and omission would be material to any class

member, as a reasonable person would attach importance to the existence or nonexistence of Progressive Select's conduct and omission of the fact that an insured can keep their salvage vehicle without penalty and can sell the vehicle at auction or otherwise or receive salvage value from Defendants if they transfer title to Progressive Casualty in determining their choice of action related to transferring or not transferring title of their damaged vehicle to Progressive Select and/or demanding that Defendants pay them the salvage value of their vehicle if they transfer title, because knowing this information could allow insureds to obtain more money after an accident and settlement.

61.    Given that Defendants require insureds such as Plaintiffs and Class members to transfer title to their total loss vehicles to Progressive Casualty in order to receive their ACV payments and do not tell insureds that they have the right to keep their vehicles without penalty and to sell the vehicles at auction or otherwise or receive salvage value from Defendants if they transfer title to Progressive Casualty, reasonable consumers insured by Defendants would reasonably assume that they have no such right and have to transfer title to their vehicles to Progressive Casualty in order to receive their ACV payments, as Plaintiffs and Class members reasonably assumed here. Because insureds do have such right and such transfer is not required, Defendants' conduct and Defendants' omission of the information regarding insureds' rights is likely to deceive members of the public.

62.    Mr. Gonzalez relied on Progressive Select's conduct and omission by believing that the title to the vehicle had to be transferred to Progressive Casualty for Mr. Gonzalez to receive his ACV payment and therefore transferring title to the vehicle, through his mother Ms. Gonzalez Silva, to Progressive Casualty. Had Progressive Select disclosed to Mr. Gonzalez in any of its telephone, email, or in-person communications to him during the settlement process that he could keep the salvage vehicle without penalty and could sell the vehicle at auction or otherwise or receive salvage value from Defendants if he transferred title to Progressive Casualty, Mr. Gonzalez would have been made aware of his and his mother's right to keep the salvage vehicle through such communications from Progressive Select, and he would have either kept the vehicle to sell it at auction or otherwise or insisted that he receive the salvage value of the vehicle from Progressive

Select in addition to his ACV payment when Progressive Select took the vehicle. Because Progressive Select required Mr. Gonzalez through his mother to transfer title to the vehicle to Progressive Casualty and failed to disclose to Mr. Gonzalez in any communication during the settlement process that he could keep the salvage vehicle without penalty and could sell the vehicle at auction or otherwise or receive salvage value from Defendants if he transferred title to Progressive Casualty, all of which he had the right to do under the Policy and California law, Mr. Gonzalez believed the title of the vehicle had to be transferred in order for him to receive his ACV payment.

63.     Progressive Select achieved transfer of title to the vehicle to Progressive Casualty, but Progressive Select did not compensate Mr. Gonzalez for the value of the totaled vehicle as salvage. Upon information and belief, Progressive Select or its affiliate then disposed of the vehicle as salvage through Insurance Auto Auctions ("IAA") or another auction house, for which Progressive Select or Progressive Casualty was paid some monetary sum based on the sale of the vehicle as salvage minus a fixed administrative charge from the auctioneer. None of this money was ever paid to Mr. Gonzalez.

## FACTS RELATED TO PLAINTIFF DELIA SUAREZ-BELL

64.     Plaintiff Suarez-Bell—one of Defendant United Financial Casualty Company's ("United Financial") named insureds under the Policy—was a victim of the UCL violations spelled out above or the alternative breach of contract. On February 6, 2023, Ms. Suarez-Bell was involved in an accident that resulted in collision damage to her insured vehicle. After the accident, on February 6, 2023, Ms. Suarez-Bell contacted United Financial and made an insurance claim to United Financial under the Policy.

65.     Throughout the claims process, United Financial communicated with Ms. Suarez-Bell multiple times via email, telephone, mail, and in person, including but not limited to an email sent by Christian Posada—a Managed Repair Representative of United Financial or another Progressive entity—to Ms. Suarez-Bell, with Mario Leal from the Claims Department copied, on February 9, 2023, discussing Ms. Suarez-Bell's claim and proposed settlement; a document titled "Settlement Summary" attached to the February 9 email from Mr. Posada to Ms. Suarez-Bell that

16

gave information related to the claim, Ms. Suarez-Bell's vehicle, and the settlement amount and provided a calculation of the proposed settlement amount and any adjustments or deductions to the proposed settlement amount; a document titled "Vehicle Valuation Report" attached to the February 9 email from Mr. Posada to Ms. Suarez-Bell that gave information related to the claim, Ms. Suarez-Bell's vehicle, United Financial's estimated value of Ms. Suarez-Bell's vehicle, and a calculation of the proposed settlement amount, including adjustments or deductions to the proposed settlement amount; a phone conversation with Mr. Leal in February or March 2023 during which Mr. Leal discussed how much United Financial would pay Ms. Suarez-Bell as a settlement; emails between Mr. Posada, Mr. Leal, and Ms. Suarez-Bell on March 7, 2023 and March 8, 2023 in which Mr. Posada, Mr. Leal, and Ms. Suarez-Bell discussed scheduling an appointment for Ms. Suarez-Bell to visit United Financial's Riverside office to receive her settlement check; a visit by Ms. Suarez-Bell to United Financial's Riverside, California office on March 10, 2023, during which Ms. Suarez-Bell and United Financial/Progressive agent Summer Hills both signed a Vehicle/Vessel Transfer and Reassignment Form and the title to Ms. Suarez-Bell's vehicle, accomplishing the transfer of Ms. Suarez-Bell's vehicle to Progressive Casualty; and documents mailed to Ms. Suarez-Bell that included a March 22, 2023 cover letter signed by Mr. Leal, a copy of the Vehicle/Vessel Transfer and Reassignment Form and title to Ms. Suarez-Bell's vehicle signed by Ms. Suarez-Bell and Ms. Hills on March 10, 2023. Ms. Suarez-Bell read the emails and mail that she received from United Financial and spoke with United Financial over the phone and in person, and she relied on the information United Financial provided to her in these communications. On information and belief, United Financial has records that include the dates, methods, and content of additional communications to Ms. Suarez-Bell as well as the identities of United Financial representatives, agents, or employees who made these communications to Ms. Suarez-Bell—information that is solely within the possession of United Financial. United Financial could have disclosed in any of the aforementioned or other communications to Ms. Suarez-Bell that she could keep her salvage vehicle without penalty and could sell her vehicle at auction or otherwise or receive salvage value from Defendants if she

transferred title to Progressive Casualty, but in no communication to Ms. Suarez-Bell did United Financial ever disclose such information to Ms. Suarez-Bell.

66.     At all times material, Ms. Suarez-Bell had made payments of premiums under the Policy, and it was in full force and effect at the time of the accident. She is still insured by one or more of the Defendants.

67.     After the accident, United Financial covered the claim and declared the non-stolen vehicle a total loss and offered to pay and paid Ms. Suarez-Bell what Defendant deemed ACV.

68.     At or about the time of settling the claim in or about February-March 2023, Ms. Suarez-Bell was subject to Defendant's claims process described above. In the claims process, knowing, maximizing, and receiving the amount of an ACV payment and knowing her attendant rights to her salvage vehicle were material to her.

69.     At or about the same time, for Ms. Suarez-Bell to receive her ACV payment, United Financial required Ms. Suarez-Bell to transfer title to her vehicle to Progressive Casualty even though the Policy did not state this condition to receiving her ACV payment. A form title transfer document dated March 3, 2023, among other things, evidenced this transfer requirement as does typically a form "ADVICE FOR PAYMENT." United Financial paid Ms. Suarez-Bell ACV. But United Financial did not pay Ms. Suarez-Bell the salvage value of her total loss vehicle, even though under California law she was entitled to keep the vehicle and its value and a contrary limitation on this benefit was not disclosed in the Policy.

70.     At or about that same time, when she made her claim, and in the Policy, United Financial also did not disclose to Ms. Suarez-Bell that she could keep the salvage vehicle without penalty and could sell the vehicle at auction or otherwise or receive salvage value from Defendants if she transferred title to Progressive Casualty.

71.     The foregoing conduct and omission of the information that United Financial failed to disclose to Ms. Suarez-Bell were material to her. Moreover, such conduct and omission would be material to any class member, as a reasonable person would attach importance to the existence or nonexistence of United Financial's conduct and omission of the fact that an insured can keep their salvage vehicle without penalty and can sell the vehicle at auction or otherwise or receive

18

salvage value from Defendants if they transfer title to Progressive Casualty in determining their choice of action related to transferring or not transferring title of their damaged vehicle to Progressive Casualty and/or demanding that Defendants pay them the salvage value of their vehicle if they transfer title, because knowing this information could allow insureds to obtain more money after an accident and settlement.

72. Given that Defendants require insureds such as Plaintiffs and Class members to transfer title to their total loss vehicles to Progressive Casualty in order to receive their ACV payments and do not tell insureds that they have the right to keep their vehicles without penalty and to sell the vehicles at auction or otherwise or receive salvage value from Defendants if they transfer title to Progressive Casualty, reasonable consumers insured by Defendants would reasonably assume that they have no such right and have to transfer title to their vehicles to Progressive Casualty in order to receive their ACV payments, as Plaintiffs and Class members reasonably assumed here. Because insureds do have such right and such transfer is not required, Defendants' conduct and Defendants' omission of the information regarding insureds' rights is likely to deceive members of the public.

73. Ms. Suarez-Bell relied on United Financial's conduct and omission by believing that the title to her vehicle had to be transferred to United Financial's affiliate Progressive Casualty for Ms. Suarez-Bell to receive her ACV payment and therefore transferring title to her vehicle to Progressive Casualty. Had United Financial disclosed to Ms. Suarez-Bell in any of its telephone, email, mail, or in-person communications to her during the settlement process that she could keep the salvage vehicle without penalty and could sell the vehicle at auction or otherwise or receive salvage value from Defendants if she transferred title to Progressive Casualty, Ms. Suarez-Bell would have been made aware of her right to keep her salvage vehicle from such communications with United Financial, and she would have either kept her vehicle to sell it at auction or otherwise or insisted that she receive the salvage value of her vehicle from United Financial in addition to her ACV payment when United Financial took her vehicle. Because United Financial required Ms. Suarez-Bell to transfer title to her vehicle to Progressive Casualty and failed to disclose to Ms. Suarez-Bell in any communication during the settlement process that she could keep her salvage

19

1  vehicle without penalty and could sell her vehicle at auction or otherwise or receive salvage value

2  from Defendants if she transferred title to Progressive Casualty, all of which she had the right to

3  do under the Policy and California law, Ms. Suarez-Bell believed that she had to transfer title of

4  her vehicle in order to receive her ACV payment.

5      74.    United Financial achieved transfer of title to the vehicle from Ms. Suarez-Bell, but

6  United Financial did not compensate Ms. Suarez-Bell for the value of her totaled vehicle as

7  salvage. Upon information and belief, United Financial or its affiliate then disposed of the vehicle

8  as salvage through IAA or another auction house, for which United Financial or its affiliate was

9  paid some monetary sum based on the sale of the vehicle as salvage minus a fixed administrative

10  charge from the auctioneer. None of this money was ever paid to Ms. Suarez-Bell.

11
12  **DEFENDANT'S MISCONDUCT IS WIDESPREAD AND TRACKABLE AND CAUSED INJURY TO PLAINTIFFS AND CLASS MEMBERS**

13      75.    Interpretation of the Policy and California law to determine whether Defendants'

14  conduct is a UCL violation or breach of contract is not dependent on the individualized factual

15  circumstances applying to Plaintiffs and each Class member. Plaintiffs' class claims for violation

16  of the UCL or alternatively breach of contract present questions of law for the Court whose

17  determination and resolution would likewise apply to Plaintiffs and all Class members across the

18  board.

19      76.    At least one of the Defendants has contended that it completely and properly

20  fulfilled its obligations and duties under the Policy and under California law in paying insureds

21  ACV on total loss claims, in not paying them salvage value, and in taking title to insureds'

22  vehicles, and that insureds have no claim for damages (i.e., at law) for such requirement.

23      77.    The common injury that Defendants caused Plaintiffs and Class members stems

24  from a dispute over the legality under the Policy and California law of Defendants' total loss

25  claims process.

26      78.    Upon information and belief, Defendants track insureds' total loss claims and sales

27  of vehicles they declare total losses after the vehicles are sold for salvage from which Defendants

28  have benefited.

79. Upon information and belief, Defendants' conduct is systematic and continuous, continues unabated, and unless enjoined will continue to harm and injure the public by unlawfully depriving insureds of all their rights to their total loss vehicles under the Policy and California law.

80. Plaintiffs for themselves and the "Class" defined below seek to obtain an injunction and/or restitution, as there is no adequate remedy at law.

81. Alternatively, Plaintiffs for themselves and the "Class" defined below seek to obtain monetary damages for Defendants' breach of contract.

## CLASS REPRESENTATION ALLEGATIONS

82. Plaintiffs wish to be designated as "Class Representatives," and as Class Representatives bring this action pursuant to Federal Rule of Civil Procedure 23 on behalf of all other persons similarly situated—defined as follows:

> Class:
> Within the applicable statutes of limitations before the filing of this complaint until the day the Court decides class certification (the "Class Period"), all individuals (1) who have made a claim under the Policy[6] for collision or comprehensive coverage on a vehicle covered under the Policy; (2) Defendants respectively settled the claim paying what Defendants respectively considered "actual cash value" for the covered vehicle; (3) Defendants obtained transfer of title to the vehicle to itself or an affiliated company; and (4) Defendants, respectively, on their own or through a vendor or affiliate, sold the damaged vehicle for salvage or for parts.

Plaintiffs and these Class members reserve the right to amend the Class definition as discovery proceeds and to conform to the evidence.

83. Excluded from the Class are all members of the judiciary and persons employed by or family members of Plaintiffs' counsel. Also excluded from the Class are insureds meeting the criteria of the Class but whose vehicles were, according to either of the Defendants' records, stolen and recovered.

84. Numerosity. Plaintiffs allege on information and belief that the number of Class members in the Class is so numerous that joinder of them is impractical.

85. Currently, upon information and belief, there are over 50,000 members in the Class. The members of the Class will be easily ascertained through Defendants' or their agents' records

---

[6] *See, e.g.*, Exhibit A and materially similar policies issued in California by Defendants.

using their own computer data. Indeed, a simple run of the data will uncover all claims information, including amounts paid insureds, whether the claim is a total loss, and the amount for which the damaged vehicles were sold at auction.

86. <u>Commonality</u>. There are common questions of law and/or fact applicable to members of the Class. These principal common questions include the following, during the Class Period stated in the Class definition:

a. Whether Defendants' acts and practices including their total loss claims process were fraudulent, unfair, or unlawful acts or practices in violation of the UCL;

b. Whether, alternatively, Defendants' acts and practices including their total loss claims process breached the Policy; and,

c. Whether Plaintiffs and Class members are entitled to restitution and injunctive relief for violation of the UCL or alternatively to damages for breach of contract.

87. <u>Typicality</u>. The claims of the Class Representatives are typical of the claims that would be asserted by other members of the Class in that, in proving Plaintiffs' claims, Plaintiffs will simultaneously prove the claims of all Class members. Each Plaintiff and each Class member suffered a loss as a result of an accident or another covered peril to an insured non-stolen vehicle and made a claim under the Policy for the loss; Defendants in turn deemed the covered vehicle to be a total loss under the Policy; Defendants then paid "actual cash value" on the claim; but Defendants obtained title to the vehicle, when under the circumstances stated above, either California law or the Policy does not authorize or permit this taking. Class Representatives share claims with Class members for this conduct either for violation of the UCL or alternatively for breach of contract.

88. <u>Adequacy</u>. Plaintiffs have no conflicts of interest and will fairly and adequately protect and represent the interests of each member of the Classes. Additionally, Plaintiffs are fully cognizant of their responsibility as Class Representatives and have retained experienced counsel fully capable of, and intent upon, vigorously pursuing the action. Each Class counsel has extensive experience in class and/or insurance claims and litigation.

**CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL**
*Gonzalez v. Progressive Select Insurance Co.*, US District Court, Central District of California

89.    <u>Predominance and Superiority</u>. This action should be certified because the common questions stated above and whether Defendants' conduct violates the UCL or alternatively is a breach of contract predominate over any individual issues affecting Class members. Plaintiffs' claims also should be certified because class representation is superior to other available methods for the fair and efficient adjudication of this controversy.

90.    <u>Issue Certification</u>. In the alternative, the Court can certify an issue class with respect to the Defendants' liability on a class-wide basis and then proceed in accordance with the Federal Rules of Civil Procedure and employ other mechanisms at its disposal with respect to damages or restitution of individual Class members or entry of an injunction.

**COUNT I**
**VIOLATION OF THE UNFAIR COMPETITION LAW**
**CAL. BUS. & PROF. CODE § 17200 ET SEQ.**

91.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in paragraphs 1–44, and 52–90 as if fully set forth herein.

92.    This claim is brought by Plaintiffs individually and on behalf of the Class.

93.    Defendants committed acts of unfair competition, as described above, in violation of the Unfair Competition Law, and Plaintiffs and Class members have no adequate remedy at law.

94.    Despite their special relationship and duties owed insureds including Plaintiffs and Class members and armed with unequal bargaining power and knowledge over Plaintiffs and Class members, Defendants leveraged the unfortunate situations that befell Plaintiffs and Class members (of having their automobiles totaled and needing transportation means) to further benefit themselves by manipulating Plaintiffs and Class members into transferring titles to their valuable damaged vehicles as a condition of receiving their ACV payments.

95.    Defendants took advantage of that position to violate its legal duties of fairness and disclosure owed insureds under California law to the insureds' detriment.

96.    Based on the foregoing, Defendants' conduct constitutes an "unfair" act or practice within the meaning of the UCL, (1) because Defendants' conduct was unscrupulous, unethical, or substantially injurious to Plaintiffs and Class members; (2) because the conduct was contrary to

California public policy tethered to the rights and duties found in 10 CCR § 2695.4(a), 10 CCR § 2695.8, Cal. Veh. Code §§ 11515(b) & 544(b), and section 381(c) of the California Insurance Code; or (3) because the conduct (a) caused or was likely to cause consumer injury that was substantial; (b) the injury was not outweighed by any countervailing benefits to consumers or competition; and (c) the injury could not be avoided by a reasonable consumer.

97.     Based on the foregoing, Defendants' conduct also constitutes an "unlawful" act or practice within the meaning of the UCL, because under a proper interpretation of California law, it violated the rights and duties found in 10 CCR § 2695.4(a), 10 CCR § 2695.8, Cal. Veh. Code §§ 11515 & 544, and section 381 of the California Insurance Code.

98.     Based on the foregoing, Defendants' conduct constitutes a "fraudulent" act or practice within the meaning of the UCL, because the conduct was likely to deceive members of the public.

99.     Plaintiffs and Class members have lost money as a result of Defendants' UCL violations in that Defendants took their vehicles when they had no lawful right to do so and then sold them for salvage with no compensation to Plaintiffs and Class members.

100.    At a minimum, Plaintiffs and Class members are entitled to equitable relief such as restitution and/or injunctive relief under California Business and Professions Code section 17203 enjoining Defendants from continuing to conduct business through the fraudulent, unfair, and/or unlawful acts and practices stated above.

## COUNT II
## BREACH OF CONTRACT
### (In the Alternative)

101.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in paragraphs 1–29, and 45-90, as if fully set forth herein.

102.    This claim is brought by Plaintiffs individually and on behalf of the Class, in the alternative to Count I.

103.    Defendants' Policy is a contract under which Defendants insured the vehicles of Plaintiffs and Class members, which were "covered autos" under the Policy.

**CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL**
*Gonzalez v. Progressive Select Insurance Co.*, US District Court, Central District of California

104.   Each Plaintiff and each Class member is or was an insured under the Policy. Plaintiffs satisfied all conditions precedent to this action.

105.   The Policy at issue was an insurance contract and was maintained in full force and effect by Plaintiffs and Class members at all times material hereto.

106.   Each Plaintiff and each Class member made a covered claim for covered damage under the Policy, pursuant to which Defendants declared the vehicle a total loss, paid each Plaintiff and each Class member what it considered ACV, and then took title to the vehicle.

107.   Defendants did not and have not paid Plaintiffs and Class members the salvage values of their total loss vehicles measured by what they were sold for at action.

108.   Based on the foregoing, Defendants breached the Policy by not paying Plaintiffs and Class members the agreed or appraised salvage value in consideration for taking title to Plaintiffs' and Class members' vehicles.

109.   As a direct and proximate result of Defendants' breaches of the Policy, Plaintiffs and Class members suffered damages.

## **PRAYER FOR RELIEF**

Plaintiffs and the Class members seek the following relief:

a.   Certification of the Class;

b.   A judgment against Defendants;

c.   Award damages, including actual, nominal, presumed, and statutory damages as provided by law, or restitution to Plaintiffs and Class Members in an amount to be determined at trial, plus pre- and post-judgment interest, in accordance with law;

d.   Award the costs of the suit, including reasonable attorneys' fees and pre- and post-judgment interest as provided by law;

e.   Order that Defendants, their directors, officers, parents, employees, agents, successors, members, and all persons in active concert and participation with Defendants be enjoined and restrained from, in any manner, directly or

**CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL**
*Gonzalez v. Progressive Select Insurance Co.*, US District Court, Central District of California

1        indirectly, committing any additional violations of the law as alleged herein;

2        and

3           f.   Such other relief as the Court deems just and proper.

4      <u>**DEMAND FOR JURY TRIAL**</u>

5      Plaintiffs respectfully demand a trial by jury on all issues that can be tried to a jury.

7  Date: October 25, 2024          Respectfully submitted,

8        <u>*s/ Michael Merriman*</u>

9        Michael Merriman
HILGERS GRABEN PLLC
655 West Broadway, Suite 900
San Diego, CA 92101
Telephone:  619.369.6232
Email:  mmerriman@hilgersgraben.com

*Counsel for Plaintiffs and the Proposed Class*

**CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL**
*Gonzalez v. Progressive Select Insurance Co.*, US District Court, Central District of California